# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:18-MJ-177
)
**Black LG cell phone Model: LGMP260 with IMEI:** )
**355266-08-676836-1 (DEA Exhibit N-2)** )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___NORTHERN___ District of ___TEXAS___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Sections 841(a)(1) and 841(b)(1)(A)(viii) | Possession with Intent to Distribute 500 Grams or More of Methamphetamine. |

The application is based on these facts:

SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Chris Walters, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/28/18

*Judge's signature*

City and state: AMARILLO, TEXAS        LEE ANN RENO, U.S MAGISTRATE JUDGE
*Printed name and title*

## Attachment A

## Property to Be Searched

A black LG cell phone Model: LGMP260 with IMEI: 355266-08-676836-1 (DEA Exhibit N-2).

# ATTACHMENT "B"
# LIST OF ITEMS TO BE SEARCH FOR AND SEIZED

## Property to be Searched and Seized

All electronic records relating to violations of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), including:

- Text messages;
- E-mail messages;
- Voice mail messages;
- Internet browsing history;
- Historical location (GPS) data;
- Photos;
- Video;
- Audio files;
- Calendars;
- Word processing documents;
- Spreadsheets;
- Text files;
- Contact names and telephone numbers;
- Incoming and outgoing call logs; and
- Forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when it was used.

2:18-MJ-177

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANT

I, Chris Walters, a Task Force Officer with the Drug Enforcement Administration, do depose and say:

**Affiant's Qualifications**

1. I have been a Task Force Officer (TFO) with Drug Enforcement Administration (DEA) since January 2012. I have received basic training from the DEA, Texas Department of Public Safety (DPS), the Midwest Counter Drug Training Center, the Texas Narcotics Officers Association, and several other organizations. I am currently assigned as a TFO with the DEA's Amarillo High Intensity Drug Trafficking Areas (HIDTA) group. My duties include, but are not limited to, investigating drug trafficking organizations responsible for the smuggling, distribution, and transportation of quantities of illegal controlled substances into and across the United States. I have been involved in previous investigations in which drug trafficking organizations purchase assets and operate front companies in an attempt to launder drug proceeds and conceal the true source of their illegal income. In each of these investigations, the members of the organizations have utilized telephones in order to communicate and orchestrate their distribution operations. Concurrent with my assignment to the Amarillo DEA Task Force, I am employed as a Deputy with the Potter County Sheriff's Office and have been so employed for the past 21 years. For the previous seven years at the Sheriff's Department, I had been assigned to the Special Operations Division, where my primary duties were to conduct narcotics and organized crime investigations. I have personally

initiated and conducted numerous narcotics investigations, including multiple-defendant organized crime cases.

This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about the matters related to the warrant.

## Source of Affiant's Information

2. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources:

- A. my experience investigating the distribution of illegal controlled substances and the laundering and transportation of drug proceeds;

- B. oral and written reports, and documents about this investigation that I have received from members of the DEA and the Potter County Sheriff's Office;

- C. discussions I have had personally concerning this investigation with federal and state investigators who are experienced in investigating criminal organizations involved in drug trafficking;

## Purpose of this Affidavit

3. The information contained in this Affidavit is submitted for the sole purpose of supplying probable cause for the issuance of a search warrant for the subject electronic communications device. As shown in the following paragraphs, this device is being used in furtherance of narcotics trafficking. There is probable cause to believe that evidence and instrumentalities of the offenses described herein continue to be located in the subject

electronic communications device. The warrant is also being sought to discover evidence pertaining to: (1) possession with intent to distribute a controlled substance namely methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

### Device to be Searched

4. I declare that the facts contained in this Affidavit show that there is probable cause to search the following electronic communications device:

   a. There is in Potter County, Texas, a suspected electronic communications device (hereinafter referred to as "suspected device") and more specifically described as a black LG cell phone Model: LGMP260 with IMEI: 355266-08-676836-1 (DEA Exhibit N-2). The suspected device is currently secured at the Amarillo HIDTA office located at 205 Southeast 5th Avenue, Amarillo, Texas.

   b. The suspected device is owned by or was in the possession of David Dwight Hilliard Jr, on November 19, 2018.

   c. The suspected device which contains the data and information sought is currently in the care, custody, control and management of the members of the Amarillo HIDTA Task Force.

### Electronic Storage and Forensic Analysis

5. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling

communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books or contacts;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; recording and maintaining important notes and records; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

6. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

7. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that files or remnants of such files can be recovered from electronic devices months or

even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, an electronic device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, storage media on these electronic devices contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Users of electronic devices typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

8. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the electronic devices were used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the electronic device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. System files can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## Facts in Support of Probable Cause

Affiant does believe that searching the device identified in this affidavit is likely to produce evidence that the offenses described herein has been, is, or will be committed and that the person or persons and/or the suspected party has committed, is committing,

or will commit the offenses.

9. On November 19, 2018, Potter County Sheriff's Department Deputy Joshua Newlun was in a marked unit working routine patrol on I-40 in Potter County, Texas. At approximately 2:06 p.m., Deputy Newlun stopped a 2007 Ford Edge for speeding and following too closely at approximately mile marker 52. Upon making contact with the driver of the vehicle, who was later identified as Laryssa Marie Brown, Deputy Newlun noticed indicators of possible criminal activity. Deputy Newlun noticed signs of nervousness. Brown's pulse from her carotid artery was visible through her neck during the initial stop. Once she was seated in Deputy Newlun's patrol car and he explained to her that she would be receiving a warning, she did appear to calm down. Deputy Newlun did speak to Brown about the details of the trip including the purpose and the destination. Deputy Newlun did also speak to the passenger, David Dwight Hilliard Jr about the details of the trip. When Deputy Newlun returned to his patrol unit where Brown was still seated, she was again visibly nervous. There were inconsistencies in their stories. Brown gave only vague answers to who they were going to New Mexico to see, stating they were her cousins. Hilliard stated they were going to see her grandparents.

10. Deputy Newlun did ask Brown for consent to search the vehicle, which she granted. Both suspects did tell Deputy Newlun that everything in the vehicle belonged to them, and no one else had access to the vehicle to place things in the vehicle. While searching the vehicle Deputy Newlun located a paper shopping bag in the back seat that he had previously observed between the legs of Hilliard when they were first stopped. Inside the bag was a white box. When removing the box Deputy Newlun noticed

it to be heavy. Inside the box Deputy Newlun located four vacuum sealed bags of a blue crystal substance, and 2 vacuum sealed bags of an off white crystal substance, all of which is believed to be methamphetamine. One of the bags of blue crystals was field tested, and did give a positive indicator for the presence of methamphetamine, with a total gross weight of 2.9 kilograms. This quantity of narcotics is consistent with distribution, as opposed to someone's personal use. The suspects and the vehicle were transported to the Potter County maintenance barn for processing.

11.   DEA Task Force Officer Chris Walters and Task Force Officer Jose Barron did respond to the Potter County maintenance barn. Deputy Newlun placed both suspects in chairs in the bay area of the barn. Deputy Newlun asked each of them to identify which phone was theirs, and Hilliard identified the LG cell phone (DEA Exhibit N-2) as his. Both suspects were interviewed separately, with Brown being interviewed first. TFO Walters did read Brown her *Miranda* warnings, which she stated she understood and she agreed to speak to agents. Brown said she did not have a lot of details that could help her. Brown said she doesn't know as much as we think she knows. A short time later Brown stated she wanted a lawyer. The interview was then terminated and the recorder was turned off. Brown was told we were going to interview Hilliard. Brown was told that if she changed her mind and wanted to speak to Agents again to let us know. Brown said she didn't know how she could help, that she was just supposed to take it to her home and they would get it later. Brown was escorted back to the bay area of the barn so Agents could interview Hilliard.

12.   TFO Walters and TFO Barron then interviewed Hilliard. TFO Walters did

read Hilliard his *Miranda* warnings, which he stated he understood and he agreed to speak to agents. Hilliard was very quiet and did not answer several of the questions TFO Walters asked him. Hilliard said he has no information. Hilliard asked where the stuff was going and he said not with him. Hilliard did later ask for an attorney, and the interview was terminated.

13. After both interviews were concluded, Hilliard was permitted to use his cell phone (DEA Exhibit N-2) to call his family to inform them that he had been arrested. Hilliard unlocked his cell phone using his PIN number prior to making the call.

14. The Affiant took possession of the suspected device and then and transported it to Amarillo, Texas as evidence. Affiant believes the suspected device (DEA Exhibit N-2) will contain information about Hilliard's travels while transporting the methamphetamine such as their destination. Affiant also believes the suspected device will have communications with Brown to coordinate his assistance in transporting the methamphetamine.

15. The Affiant from being involved with countless investigation involving the smuggling and transportation of controlled substances into and across the United States knows it is the common practice for couriers to utilize a cell phone to maintain contact with the owner of the controlled substance for whom the couriers is working for. The owners of the controlled substance are placing the courier in possession of large amounts of a controlled substance with a whole sale value often times in the hundreds of thousands of dollars and a street level value often times in the millions of dollars. The owner of the controlled substance directing the courier will most often not be the true

owner of the narcotics and will most certainly have someone to answer to above them. The Affiant knows from training and experience that the owner of the controlled substance is risking heavy consequences including physical injury or death to them or even their family if the controlled substance becomes missing. The Affiant when searching cellular phones in possession of narcotics couriers in the past has found on nearly each and every occasion the narcotics couriers' cellular device contained evidence of their narcotics trafficking activity. This evidence included but wasn't limited to photographs, videos, text messages, emails, location data, call logs and contacts. The information unveiled the courier's illegal activities and other co-conspirators that were involved with the trafficking of the controlled substances. The Affiant from training and experience has found the courier of the controlled substance normally needs to check in with the person whom is directing them at least once a day if not several times a day. The Affiant knows in some cases the person directing the courier will even track the courier utilizing the cellphone. In the investigations where the Affiant has found the courier doesn't need to check frequently is where the courier has made countless deliveries for the drug trafficking organization and is well trusted. In these cases the courier at a minimum still had the contacts and in their cellular device for the person directing them to deliver the narcotics for and or the person they were delivery the narcotics to.

## Conclusion

Your Affiant submits that based upon the above facts, there is probable cause to believe that David Dwight Hilliard has committed the offenses of Possession with Intent

to Distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). I further believe that there is probable cause to believe that evidence, contraband, fruits of crime, items illegally possessed, and property designed for use, intended for use, and used in committing this crime (as itemized in Attachment B to the Application for Search Warrant) will be found in the black LG cell phone Model: LGMP260 with IMEI: 355266-08-676836-1 (DEA Exhibit N-2). Accordingly, I respectfully ask for a warrant to search the premises under Rule 41 of the Federal Rules of Criminal Procedure.

_____
Chris Walters
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO BEFORE ME on this 28th day of November, 2018.

_____
Lee Ann Reno
UNITED STATES MAGISTRATE JUDGE

_____
Anna Marie Bell
Assistant United States Attorney